SHOOK, HARDY & BACON L.L.P.
Mark D. Campbell (SBN 180528)
mdcampbell@shb.com
Abigail Hudson (SBN 327632)
ajwilson@shb.com
Megan Moran (SBN 356357)
mmoran@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: 424.285.8330
Facsimile: 424.204.9093

Attorneys for Defendant
Liberty Mutual Group Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER WARREN, an individual<br><br>                    Plaintiff,<br><br>    v.<br><br>LIBERTY MUTUAL GROUP, INC., a Massachusetts corporation; and DOES 1 to 20,<br><br>                    Defendants. | Case No. 2:26-cv-02042<br><br>**DEFENDANT LIBERTY MUTUAL GROUP INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>State Action Filed: January 22, 2026<br>State Action Served: January 30, 2026<br><br>[*Filed concurrently with Civil Cover Sheet; Corporate Disclosure Statement and Notice of Interested Parties; Notice of Related Case; Declarations of Mark D. Campbell and Elizabeth Duggan*] |

DEFENDANT'S NOTICE AND PETITION OF REMOVAL

## NOTICE OF REMOVAL

## TO THE CLERK OF THE UNITED STATE DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Liberty Mutual Group Inc. ("Liberty Mutual"), by and through its counsel of record, hereby removes the above-captioned action entitled *Spencer Warren v. Liberty Mutual Group, Inc.*, Case No. 26STCV02282 (the "State Court Action"), from the Superior Court of California for the County of Los Angeles to the United States District Court for the Central District of California.

In support of this Notice of Removal, Liberty Mutual states as follows:

### SERVICE AND PLEADINGS FILED IN STATE COURT

1. On January 22, 2026, Plaintiff Spencer Warren ("Plaintiff") filed a complaint against Liberty Mutual in the Superior Court of California, County of Los Angeles, entitled *Spencer Warren v. Liberty Mutual Group, Inc., a Massachusetts corporation; and Does 1 to 20*, Case No. 26STCV02282, which set forth the following nine causes of action: (1) Disability Discrimination in Violation of the Fair Employment and Housing Act ("FEHA"), (2) Failure to Engage in the Interactive Process and Provide Reasonable Accommodation in Violation of FEHA, (3) Disability Harassment in Violation of FEHA, (4) Retaliation in Violation of FEHA, (5) Failure to Prevent Discrimination and Harassment in Violation of FEHA, (6) Violation of the California Family Rights Act, (7) Wrongful Termination in Violation of Public Policy, (8) Intentional Infliction of Emotional Distress, and (9) Violation of the California Labor Code Section 1102.5 (the "Complaint"). *See* Complaint ¶¶ 29-91, Exhibit A to the Declaration of Mark D. Campbell ("Campbell Decl."). The Complaint, along with all documents filed in the related State Court Action are attached to the Campbell Declaration as Exhibits A-C.

2. On January 30, 2026, Liberty Mutual was served with Plaintiff's Complaint and accompanying documents. *See* Campbell Decl. ¶ 4. True and correct

copies of the Complaint, Summons, and Proof of Service are attached as Exhibit A to the Campbell Declaration.

3.    On February 25, 2026, Liberty Mutual filed and served an Answer to the Complaint in Los Angeles County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431(d) and asserting various affirmative defenses. *Id.* at ¶ 5. A true and correct copy of Liberty Mutual's Answer is attached as Exhibit B to the Campbell Declaration.

4.    As of the date of this Removal, Exhibits A, B, and C to the Campbell Declaration constitute all process, pleadings, and orders  in the State Court Action. *Id.* at ¶ 7.

## TIMELINESS OF REMOVAL

5.    This Notice of Removal has been filed within 30 days after Liberty Mutual was served with the Summons and Complaint on January 30, 2026. Campbell Decl. at ¶ 4. Therefore, it has been filed within the time period mandated by 28 U.S.C. §§ 84(c) and 1441(a).

## VENUE IS PROPER

6.    This action was filed in the Superior Court in and for the County of Los Angeles. Thus, venue properly lies in the United States District Court for the Central District of California, Western Division, pursuant to 28 U.S. C. §§ 84(c) and 1441(a).

## REMOVAL JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

7.    Removal of this action is proper under 28 U.S.C. § 1332(a). This matter is a civil action over which this District Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). This action is one that may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, as set forth below. *See* 28 U.S.C. §§ 1332(a), 1441(b).

NOTICE OF REMOVAL

## I. Complete Diversity of Citizenship Exists Between Plaintiff and Liberty Mutual.

8. Citizenship of the parties is determined by "the citizenship of the parties at the time of the filing of the complaint[.]" *Mann v. City of Tucson*, 782 F.2d 790, 794 (9th Cir. 1986).

9. In his Complaint, Plaintiff alleges that "[a]t all relevant times herein, Plaintiff was domiciled in the State of California, County of Los Angeles." *See* Compl. ¶ 6, Exhibit A to Campbell Decl. These allegations indicate Plaintiff's California citizenship. *See CarMax Auto Superstores CA LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1091, fn. 38 (C.D. Cal. 2015) ("Allegations that a party has an extensive and continuous period of residence and employment in a state are sufficient to establish that the party is a citizen of the state"); *Mondragon v. Capital One Auto Fin.,* 736 F.3d 880, 885 (9th Cir. 2013) (observing "that the party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change"). Plaintiff, therefore, is domiciled in and is a citizen of the State of California.

10. A corporation is a "citizen" both of the state in which it was incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

11. Liberty Mutual was incorporated in Massachusetts. *See* Declaration of Elizabeth Duggan ("Duggan Decl.") ¶ 3. Liberty Mutual's principal place of business is also in Massachusetts where its officers directed, controlled, and coordinated the corporate activities. *Id*. Accordingly, for purposes of 28 U.S.C. § 1332(c)(1), Liberty Mutual is a citizen of Massachusetts.

12. The Complaint also names as Defendants Does 1 to 20. The alleged Doe Defendants named in the Complaint are not considered in assessing diversity. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants

4
NOTICE OF REMOVAL

sued under fictious names shall be disregarded."). Accordingly, the citizenship of the alleged Doe Defendants does not impact the diversity analysis for removal.

13. Because Plaintiff is a citizen of California and Liberty Mutual is a citizen of Massachusetts, the complete diversity of citizenship exists in this matter.

## II. The Amount in Controversy Requirement is Satisfied.

14. Diversity jurisdiction exists where the parties are diverse of citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

15. Where, as here, a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum, but that burden is not an "insurmountable obstacle" to removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). A defendant may utilize the allegations in the complaint to establish the amount in controversy. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995)). Alternatively, a defendant may also set forth facts in its notice of removal that demonstrate that the amount in controversy exceeds $75,000, and Liberty Mutual need only establish by a preponderance of evidence that Plaintiff's claims exceed the statutory minimum. *Id.* at 376-377.

16. For purposes of determining the amount in controversy, a court must assume the allegations in the complaint are true and assume a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002).

17. Plaintiff seeks, among other remedies, monetary damages for past and future lost employment earnings and benefits, diminished earning capacity, loss of reputation, mental and emotional anguish, attorneys' fees, and punitive damages.

18. Plaintiff claims Liberty Mutual "discriminated and harassed Plaintiff because of [his] disability, retaliated against him when he reported FEHA violations,

NOTICE OF REMOVAL

terminated his employment in violation of FEHA, California Labor Code section 1102.5, and engaged in other unlawful employment practices. *See* Compl. ¶ 5, Exhibit A to Campbell Decl.

19.    Specifically, Plaintiff alleges he suffers from depression, which caused him to need more time to complete tasks, time to disengage from others, and time off work. *See* Compl. ¶ 22, Exhibit A to Campbell Decl. Plaintiff alleges he reported his disability and need for accommodation to his supervisors and that Liberty Mutual failed to engage in the interactive process or provide Plaintiff with reasonable accommodations. *See id.* at ¶ 23. Plaintiff further alleges his supervisors harassed him due to his disability and retaliated against him for reporting the harassment and discrimination. *See id.* at ¶¶ 16-21. Finally, Plaintiff alleges his supervisors continued to harass him and retaliated against him due to his disability by placing him on a Performance Improvement Plan and later terminating his employment on May 13, 2025. *See id.* at ¶¶ 21-27. Plaintiff seeks damages for emotional distress, loss of earnings and employment benefits, loss of future earning capacity, pain and suffering, attorneys' fees, and punitive damages. *See id.* at ¶¶ 29-91.

20.    Although Liberty mutual disputes liability and damages, for purposes of the jurisdictional requirements for removal only, Liberty Mutual has a good faith basis to believe the allegations and relief sought in Plaintiff's Complaint put in controversy, in the aggregate, and amount that exceeds $75,000. The Ninth Circuit has explicitly held that a defendant need not concede liability on any of a plaintiff's claims in order to establish the amount in controversy, but need only show how much is "in play." *Lewis v. Verizon Communications, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

21.    As set forth below, the amount in controversy exceeds $75,000. All calculations supporting the amount in controversy are based on the allegations in the

Complaint, assuming, without any admission, the truth of the facts alleged, and assuming liability is established.[1]

**1. Plaintiff's Claims Put At Least $161,319 in Alleged Economic Damages in Controversy.**

22.   Plaintiff worked for Liberty Mutual from January 21, 2020 to May 13, 2025 as an Enterprise Risk Analyst. *See* Duggan Decl. ¶ 5. Plaintiff was a salaried employee. *See id.* at ¶ 6. At the time his employment ended, Plaintiff earned a salary of $90,200 or approximately $1,734.61 per week. *See id.*

23.   As of the date of this removal, 41 weeks has passed since Plaintiff's termination from Liberty Mutual. *See* Duggan Decl. ¶ 5. Thus, Plaintiff's claim for lost earnings alone is $71,119.10 (calculated as $1,734.61 weekly salary over 41 weeks).

24.   The amount in controversy also includes alleged lost wages between removal and the anticipated date of trial. *See, e.g., Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (holding that, where claimed, lost future wages are included in the amount in controversy and holding "[t]hat the amount in controversy is assessed at the time of removal does *not* mean the mere futurity of certain classes of damages precludes them from being part of the amount in controversy.") (emphasis in the original); *Mendoza v. QVC Inc.,* 5:20-CV-01595-ODW (KKx), 2021 WL 633023 at *3 (C.D. Cal. Feb. 18, 2021) ("[W]here a plaintiff puts future wages in controversy, courts calculate lost wages through the date of trial."). California District Courts have expressly held that, for purposes of calculating the amount in controversy

---

[1] Liberty Mutual's references to specific damages amounts are provided solely for the purposes of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Liberty Mutual maintains that each of Plaintiff's claims is without merit and that Liberty Mutual is not liable to Plaintiff. Liberty Mutual expressly denies that Plaintiff is entitled to recover any of the relief sought in the Complaint. No statement or reference contained herein shall constitute an admission of liability of a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.

NOTICE OF REMOVAL

in employment cases, one year is a "very conservative" estimate of the time period between removal and trial. *See Barajas v. Wells Fargo Bank, N.A.,* No. EDCV 21-00844 JAK (SPx), 2022 WL 819928, at *4 (C.D. Cal. Mar. 18, 2022).

25.    Even extrapolating conservatively to a potential trial date one year from removal, adding an additional 52 weeks, Plaintiff's alleged lost earnings through trial would total an additional $90,200, for a total of $161,319.10.

26.    Thus, although Liberty Mutual disputes liability and damages, for purposes of jurisdictional requirements for removal only, Liberty Mutual has a good faith basis to believe that Plaintiff's alleged lost earnings alone exceed the jurisdictional minimum.

**2.  Plaintiff Seeks Damages for Emotional Distress and Punitive Damages, Which Put the Amount in Controversy Well Over $75,000.**

27.    Plaintiff additionally seeks damages for emotional distress, damages for suffering incurred due to harm to his personal and professional reputation and credibility, and punitive damages resulting from Liberty Mutual's purported conduct. *See* Compl. at ¶¶ 33-35, 40-42, 50-51, 57-58, 63-64, 70-72, 79-81, 85-87, and 91, Exhibit A to Campbell Decl.

28.    The Court may take into consideration Plaintiff's allegations for such non-economic damage and attorney's fees to establish the jurisdictional minimum. *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002) ("The jurisdictional minimum may be satisfied by claims for special and general damages, attorney's fees and punitive damages.").

29.    To establish emotional distress damages, defendant may introduce evidence of jury verdicts and settlements in cases involving analogous facts. *Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012) ("Cain seeks to recover emotional distress from Hartford, which must be considered in this [amount in controversy] analysis."). Although Liberty Mutual disputes that Plaintiff is entitled to an award for emotional distress damages as a result of Liberty Mutual's

alleged conduct, awards to plaintiffs for such damages in employment cases "may be substantial," easily in excess of the jurisdictional minimum for such damages. *Simmons*, 209 F. Supp. 2d at 1039 (relying in part on an award of pain and suffering for $3.5 million in an employment discrimination case as an indication that "emotional distress damages in a successful employment discrimination case may be substantial"). Juries in California have awarded well in excess of $75,000 for emotional distress damages in wrongful termination cases. *See, e.g., Roby v. McKesson*, 47 Cal. 4th 686, 699 (2009) (awarding a single plaintiff $1,600,000 in non-economic damages for three separate counts of wrongful termination (later reduced by stipulation to $800,000)); *Gardenhire v. Housing Authority of the City of Los Angeles*, 85 Cal.App.4th 236, 240-41 (2002) (affirming judgment for plaintiff, including a jury award of $1.3 million in emotional distress damages for wrongful termination in violation of plaintiff's public policy claim). Juries have also awarded well in excess of $75,000 for emotional distress damages in discrimination and retaliation cases. *See, e.g., Velez v. Roche*, 335 F. Supp. 2d 1022, 1037 (N.D. Cal. 2004) (awarding a single plaintiff $300,000 in emotional distress damages where plaintiff suffered depression and other mental anguish following discrimination); *Zanone v. City of Whittier*, 162 Cal. App. 4th 174, 185 (2008) (affirming emotional distress award of $660,000 on plaintiff's FEHA discrimination and retaliation claims where plaintiff suffered stress, anxiety, and depression); *Iwekaogwu v. City of Los Angeles*, 75 Cal.App.4th 803, 821 (1999) (affirming $450,000 award for emotional distress based on discrimination and retaliation claims); *Swinton v. Potomac Corp.*, 270 F.3d 794, 799 (9th Cir. 2001), *cert. denied*, 535 U.S. 1018 (2002) (jury awarded plaintiff $30,000 for emotional distress). As the above cases reflect, emotional distress damages can widely vary but an estimate of $50,000 in emotional distress damages would be conservatively appropriate here.

30.   Further, Plaintiff seeks recovery for punitive damages, which may also be included for the purpose of analyzing an amount in controversy. *See Gibson v.*

9
NOTICE OF REMOVAL

*Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Simmons*, 209 F. Supp. 2d at 1033 (recognizing that jury verdicts in other similar cases in California "amply demonstrate the potential for large punitive damage awards in employment discrimination cases."). Plaintiff's request for punitive damages further increases the amount in controversy.

### 3. Plaintiff's Claim for Attorneys' Fees Puts the Amount in Controversy Well Over $75,000.

32.   Plaintiff also seeks to recover an unspecified amount of attorneys' fees, costs of suit, and interest to the extent permitted by law. *See* Compl., Prayer for Relief ¶¶ 5-6, Exhibit A to Campbell Decl. These fees are properly included when determining the amount in controversy. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir. 1998) ("[w]e hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). The Ninth Circuit has held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount in controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

33.   As a conservative estimate, one year of litigation for a discrimination, retaliation and wrongful termination action is likely to generate at least 100 attorney work hours through trial. Assuming Plaintiff's counsel's rate is charged at a moderate rate of $300 per hour, attorney's fees would reach at least $30,000.

34.   While Liberty Mutual denies Plaintiff's allegations and theories of recovery, denies that Plaintiff is entitled to any of the relief for which Plaintiff has prayed, and expressly reserves all of its defenses, based on Plaintiff's allegations, the amount in controversy exceeds $75,000 as demonstrated above.

35.   Accordingly, this Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. § 1441(a).

NOTICE OF REMOVAL

## PROCEDURAL PREREQUISITES

36.   Venue lies in the Central District of California pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(c). This action was originally brought in the Superior Court of the State of California, County of Los Angeles, which is located within the jurisdiction of the United States District Court for the Central District of California, Western Division. Therefore, this is the appropriate Court for removal.

37.   Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed with the clerk of the Superior Court for the County of Los Angeles, and Liberty Mutual is concurrently serving this Notice of Removal on Plaintiff through his counsel of record.

38.   If any question arises as to the propriety of the removal of this action, Liberty Mutual respectfully requests the opportunity to present a brief and oral argument in support of its position that the case is removable.

## CONCLUSION

39.   Accordingly, Liberty Mutual respectfully requests that this action be removed from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, Western Division, and that all future proceedings in this matter take place in the United States District Court for the Central District of California.

Dated: February 26, 2026                         SHOOK, HARDY & BACON L.L.P.


                                                 By: */s/ Mark D. Campbell*
                                                     Mark D. Campbell
                                                     Abigail Hudson
                                                     Megan Moran
                                                     Attorneys for Defendant
                                                     Liberty Mutual Group Inc.

11
NOTICE OF REMOVAL